IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Jackie Willard, #119141, ) | |
| ) | Civil Action No. 6:08-2907-GRA-WMC |
| Plaintiff, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Jon Ozmint, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the defendant's motion for summary judgment (doc. 22). The plaintiff, a state prisoner proceeding *pro se,* alleges that the defendant Director of the South Carolina Department of Corrections ("SCDC"), Jon Ozmint, violated his constitutional rights. The plaintiff claims that he has been denied the right to keep his television and that taking away his television would deprive him of the right to practice his religion.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

On November 19, 2008, the defendant filed a motion for summary judgment. By order filed on November 20, 2008, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. On December 4, 2008, the plaintiff filed a motion for injunctive relief. On December 15, 2008, this court recommended that the motion for injunctive relief be denied. The plaintiff filed no other opposition to the motion for summary judgment, so this court will consider the motion for injunctive relief as his opposition.

**FACTS PRESENTED**

The plaintiff is an inmate at McCormick Correctional Institution ("McCormick") in the SCDC. In February 2009,[1] television signals will change from analog to digital, and analog televisions will require a converter box in order to receive digital television signals. In March 1995, SCDC policy was changed so that inmates were no longer allowed to purchase televisions. This policy was in effect until 2007. Inmates were allowed to keep televisions that were already in their possession. According to the SCDC, a suitable converter box for the inmates' analog televisions would need to be made of clear plastic for security reasons. James Sligh, an Operations Coordinator for SCDC, testified in his affidavit that though the majority of inmates with grandfathered televisions are relatively problem-free inmates, there have still been problems over the years with contraband being found in the televisions. Inmates are able to hide contraband such as drugs or other items that present a threat to the security of the institutions inside the televisions, and it is very difficult for security personnel to find these items. The standard type converter box would present these same problems or difficulties. Televisions or converter boxes that are not made from clear plastic create problems for security personnel because they need to locate contraband, but are also concerned about damaging the televisions, or potentially the converter boxes, to determine if there is contraband inside them. Converter boxes or televisions with clear plastic casings allow security personnel to determine if the item contains contraband without having to open it up and risk damaging the converter box or television.

The SCDC has been unable to obtain a commitment from suppliers who make such clear converter boxes to supply the boxes to the SCDC. The SCDC also encountered problems finding converter boxes that would be compatible for all of the televisions owned

---

[1] This court takes judicial notice that Congress recently changed the date to June 12, 2009, as the final date that full-power television stations can broadcast in analog only. *See* http://www.dtv.gov/consumercorner.html.

2

by inmates. SCDC has located a supplier and does now sell digital televisions to inmates in the institution canteens. The digital televisions currently sold by SCDC have a 9-inch flat screen that is encased in clear plastic and costs approximately $270. The SCDC determined that all televisions that will not receive a digital signal must be removed from the SCDC in February 2009. Inmates have been advised that if their television will not receive digital signals, they must send it out of the institution at their expense or turn it in to SCDC for disposal. SCDC determined that this policy is necessary to help ensure the safety and security of all institutions (Sligh aff.).

The defendant has submitted the affidavit of Nedenia Parker-Barber, Chaplain at McCormick. Ms. Parker-Barber has been an ordained minister for 10 years. Ms. Parker-Barber stated it is her opinion that the plaintiff is able to effectively practice his religion without having a television in his cell. She stated that, in her opinion, it is in no way necessary for an inmate to have a television in his cell in order to practice the Christian faith. There are a number of organized religious services for Christians at McCormick and, even without the ability to watch television, the plaintiff has numerous opportunities to practice his religion. In addition to organized religious services at McCormick, there are also Bible studies and Christian study groups, and Chaplain Parker-Barber has other resources that Christian inmates can use to practice Christianity. Ms. Parker-Barber stated that in her opinion the plaintiff has not been deprived of his right to practice his religion and will not be deprived of the right to practice his religion by removal of his television from his cell (Parker-Barber aff.).

## **APPLICABLE LAW AND ANALYSIS**

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment:

3

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted."

*Anderson,* 477 U.S. at 248. Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must provide existence of every element essential to his action which he bears the burden of adducing at a trial on the merits.

The plaintiff's claims fails as a matter of law. First, the plaintiff has no constitutional right to watch television. *See Rawls v. Sundquist*, 929 F.Supp. 284, 288-89 (M.D. Tenn. 1996) ("There is no constitutional right to television while incarcerated."); *Temple v. Dahm*, 905 F.Supp. 670, 674 (D. Neb. 1995) ("Plaintiff has no right to view television as arising from the Constitution."). The plaintiff is treated as all other inmates in that he must purchase a new television with a clear plastic cover in order to have a television in his cell.

Second, the SCDC is requiring all televisions that will not receive digital signals be removed in order to promote institutional security. "A prison regulation `is valid if it is reasonably related to legitimate penalogical interest.'" *United States v. Stotts*, 925 F.2d 83, 85-86 (4th Cir. 1991) (quoting *Turner v. Safley*, 482 U.S. 78 (1987)). The court in *Stotts* went on to state that under the United States Supreme Court's decision in *Turner*, courts are to focus on whether the regulations are reasonable. There is a "deferential standard that is `necessary if prison administrators . . ., and not the Courts, [are] to make the difficult judgments concerning institutional operations.'" *Id.* at 86 (quoting *Turner*, 482 U.S. at 89). This issue was also addressed by the United States Supreme Court in *Bell v. Wolfish*, 441 U.S. 520 (1979). The Supreme Court in *Bell* stated "maintaining institutional security and preserving internal order and discipline are essential goals which may require limitation or retraction of the retained constitutional rights of both convicted criminals and pre-trial detainees." *Bell*, 441 U.S. at 546. The Court went on to state:

> [P]rison officials must be free to take appropriate action to ensure the safety of inmates and correction's personnel and to prevent escape or unauthorized entry. Accordingly, we have held that even when an institutional restriction infringes a specific constitutional guarantee, such as the First Amendment, the practice must be evaluated in the light of the central

5

>   objective of prison administration, safeguarding institutional
>   security.

*Id.* at 547 (citations omitted).

As discussed above, inmates are not allowed to obtain regular converter boxes as the boxes would provide places for inmates to hide contraband that can threaten the security of the institution. It is clear that this policy is in place to promote the safety of inmates and correctional officers and promotes the central objective of prison administration, safeguarding institutional security. Mr. Sligh stated that there have been problems over the years with contraband being found in televisions. As this policy is in place to promote institutional security, there is no constitutional violation. Based on the foregoing, this claim fails.

The plaintiff also claims that his religious rights have been violated. The policy requiring removal of all televisions that will not receive digital television signals is reasonably related to a legitimate penalogical interest. *See Turner v. Safley*, 482 U.S. 78, 89 (1987). The Court in *Safley* set forth a four-prong test to determine this question: (1) whether there is a rational relationship between the regulation and the legitimate government interest advanced; (2) whether the inmates have available alternative means of exercising the right; (3) the impact of the accommodation on prison staff, other inmates, and the allocation of prison resources generally; and (4) whether there are "ready alternatives" to the regulation. *Id.* at 89-91.

Clearly in this case there is a rational relationship between the regulation and the legitimate government interest advanced. As shown above, the regulation is in place to promote institutional security, which is a legitimate penalogical interest. The regulation was also applied properly in this action. It is apparent that the plaintiff has alternative means of exercising his right. As stated by Chaplain Parker-Barber, removal of the plaintiff's television does not prevent him from practicing his faith. The plaintiff has alternative means to

exercise his right by continuing to practice his faith individually or in other regular religious services. Also, the impact of accommodation on prison staff and the allocation of prison resources generally was a consideration. As shown in James Sligh's affidavit, the regular converter boxes pose a security risk, and SCDC was not able to find anyone to supply converter boxes with clear plastic casing without potentially being required to spend public tax money to purchase these items. Based upon the foregoing, this claim fails.

The plaintiff has also failed to state a constitutional claim for the deprivation or destruction of his personal property. The United States Supreme Court stated:

> [A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available. For intentional, as for negligent deprivations of property by state employees, the state's action is not complete until and unless it provides or refuses to provide a suitable post-deprivation remedy.

*Hudson v. Palmer*, 468 U.S. 517, 533 (1984).

It is clear that an essential element of the plaintiff's claim of denial of due process in depriving him of his television is a showing that he does not have an adequate post-deprivation remedy under state law. In the present case, the plaintiff has neither alleged nor offered any evidence to show that he does not have such a remedy under state law, and there is no such evidence. It is clear that the plaintiff had an adequate post-deprivation remedy available to him under the South Carolina Tort Claims Act. The fact that the plaintiff chose not to pursue his remedy under state law does not render that remedy any less meaningful or suitable. As the plaintiff cannot establish the existence of an essential element of his claim for the denial of due process, this claim fails.

The defendant also argues that, to the extent the plaintiff raises his claims against him in his individual capacity, he is entitled to qualified immunity. Qualified immunity protects government officials performing discretionary functions from civil damage suits as

7

long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This qualified immunity is lost if an official violates a constitutional or statutory right of the plaintiff that was clearly established at the time of the alleged violation so that an objectively reasonable official in the defendants' position would have known of it. *Id.*

In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *see also Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). Further, the Supreme Court held that "[d]eciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." *Wilson*, 526 U.S. at 609. If the court first determines that no right has been violated, the inquiry ends there "because government officials cannot have known of a right that does not exist." *Porterfield v. Lott*, 156 F.3d 563, 567 (4th Cir. 1998).

In this case, as set forth above, the plaintiff has failed to demonstrate that the actions of the defendant violated any of his constitutional rights. Therefore, the defendant is entitled to qualified immunity.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, it is recommended that the defendant's motion for summary judgment (doc. 22) be granted.

April 3, 2009
Greenville, South Carolina

WILLIAM M. CATOE
UNITED STATES MAGISTRATE JUDGE

8